UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
                               :

In re:                             :

                             :          24-CV-08649 (JAV)

JJ ARCH LLC,                :

                             :        <u>OPINION AND ORDER</u>

               Debtor.     :

                             :

------------------------------------------------------------------X

JEANNETTE A. VARGAS, United States District Judge:

Before the Court is the appeal of Debtor-Appellant JJ Arch LLC ("Debtor," "Appellant," or "JJ Arch") from an October 11, 2024 Opinion and Order entered by Judge John P. Mastando III of the United States Bankruptcy Court for the Southern District of New York, Bankr. Dkt. No. 7 ("Bankruptcy Dismissal Opinion" or "Bankr. Op."), in the Chapter 11 bankruptcy proceeding captioned *In re JJ Arch LLC*, No. 24-BK-10381 (Bankr. S.D.N.Y.),[1] ECF No. 1.  The Bankruptcy Dismissal Opinion, issued on the motion of Jared Chassen and Arch Real Estate Holdings LLC ("AREH"), dismissed Debtor's Chapter 11 case for cause pursuant to 28 U.S.C. § 1112(b).  Bankr. Op. at 1.  For the following reasons, Debtor's appeal is **DISMISSED** and the Bankruptcy Court's decision and order of dismissal is **AFFIRMED**.

## BACKGROUND

The Court's consideration of this motion is limited to facts presented in the

---

[1] Citations to "Bankr. Dkt. No." refer to entries on the Bankruptcy Court's docket, No. 24-BK-10381 (JPM).  Citations to "ECF No." refer to entries on this Court's docket for this case, No. 24-CV-08649 (JAV).

1

record below.  *See In re Ampal-Am. Isr. Corp.*, 554 B.R. 604, 617 (S.D.N.Y. 2016) ("[T]he district court may not consider evidence outside the record below."), *aff'd*, 691 F. App'x 12 (2d Cir. 2017) (summary order).  Accordingly, the facts set forth in this Opinion and Order are drawn from the record specified in Appellant's designation and Appellee's counter-designation under Federal Rule of Bankruptcy Procedure 8009.  *See generally* Bankr. Dkt. Nos. 1-243; ECF Nos. 23, 29.

The Court assumes familiarity with the history of this case, much of which is thoroughly outlined in the Bankruptcy Dismissal Opinion.  The Court thus provides a summary only of the facts necessary to resolve the instant appeal.

A.    **Factual Background**

JJ Arch is a real estate holding company formed by Jared Chassen and Jeffrey Simpson under the laws of New York in December of 2017.  Bankr. Dkt. No. 16 at 4, 54.  JJ Arch's assets include membership rights in Arch Real Estate Holdings ("AREH") and membership interests in other entities.  *Id.* at 5, 8-10. 608941 NJ, Inc., also known as "Oak," is AREH's sole other member.  *See id.* at 5 n.7.

JJ Arch holds an 80% interest in AREH, *id.* at 5, and was designated under AREH's Operating Agreement as its "Managing Member" in 2017.  *Id.* at 75, 80. Oak holds a 20% interest in AREH, *id.* at 5 n.7, and acts as AREH's "Investor Member," a role that gives Oak the right to "remove [JJ Arch] as 'managing member' [of AREH] upon a Cause Event," *id.* at 75, 93.  Notwithstanding JJ Arch's operational control over AREH, AREH's Operating Agreement provides that Oak's

consent is required for "Major Decisions," including, *inter alia,* the "tak[ing] of any Bankruptcy Action."  *Id.* at 92-93.

Mr. Chassen and Mr. Simpson's relationship became strained in mid-2023 such that each attempted to "resign" the other from JJ Arch via email over the weekend of August 5, 2023, ostensibly on the basis of several "Cause Events" in accordance with the terms of the Debtor's Operating Agreement.  *See* State Dkt. No. Nos. 67-68.[2]

In relevant part, JJ Arch's original Operating Agreement gives Mr. Simpson the "unilateral power and authority . . . to make and implement all decisions with respect to" the Debtor's day-to-day operations, including the power to "conduct, manage and control the affairs and business of the [Debtor and its subsidiaries]." Bankr. Dkt. No. 16 at 55-56.  Like the AREH Operating Agreement, however, the Debtor's Operating Agreement provides that JJ Arch could not engage in "Major Decisions," including the "tak[ing] of a Bankruptcy Action," without Mr. Chassen's consent.  *Id.* at 56.  Further, either member of the Debtor was deemed to "Resign" when that member either "fail[ed] to provide substantially all of his business time for the benefit of the [Debtor]," or that member engaged in a "Cause Event" such as "willful misconduct," "breach of fiduciary duty," or "gross negligence in relation to the business or affairs of [AREH] or a Subsidiary."  *Id.* at 51, 53, 77.

---

[2] Citations to "State Dkt." refer to filings entered in the New York Supreme Court proceeding *Simpson et al. v. Chassen et al.*, No. 158055/2023 (N.Y. Sup. Ct. N.Y. County).

B.      **Underlying Actions**

On August 15, 2023, Mr. Simpson filed a derivative action on behalf of JJ Arch and AREH in New York State Supreme Court before the Honorable Joel M. Cohen (the "State Court Proceeding").  *See* Adv. Pro. Dkt. No. 1 at 10-45.[3]  What followed was a complex, contentious series of pleadings and motions involving no fewer than five parties and 39 causes of action.  *See* Adv. Pro. Dkt. No. 2-1 at 1-5. That suit has had a troubled litigation history.  *See, e.g.*, *Simpson v. Chassen*, No. 25-CV-4004 (JMF), 2025 WL 1784931, at *2 (S.D.N.Y. June 27, 2025) (U.S. District Judge Jesse Furman granting sanctions against Mr. Simpson where Mr. Simpson's "record of frivolous removal efforts—coupled with his vexatious conduct in state court—have caused needless expense to the other parties, burdened the federal and state courts involved, and leads the Court to believe that Simpson used the removal as a vehicle to defy the state court's orders." (cleaned up)).

In November 2023, Judge Cohen issued several interim orders addressing the provisional governance of both the Debtor and AREH.  State Dkt. Nos. 412-419. One such order appointed Oak as AREH's "sole managing member" and enjoined Mr. Simpson and the Debtor from:

> [a]cting as (or holding themselves out to third parties to be) managing members of [AREH] and . . . [d]enying prompt consent to any Major Decision proposed by Oak as Managing Member . . . unless *both* JJ Arch members (Jeffrey Simpson and Jared Chassen) jointly agree to deny such consent . . . [and o]therwise interfering with Oak's ability to exercise its responsibilities as Managing Member of AREH.

---

[3] Citations to "Adv. Pro. Dkt." refer to filings entered in the adversary proceeding *Jeffrey Simpson v. First Republic Bank*, No. 24-AP-01335 (JPM) (Bankr. S.D.N.Y.).

Bankr. Dkt. No. 38-3 at 2.  Another order provided that, "[d]uring the pendency of

this litigation and subject to further order of the Court, Simpson and Chassen are

enjoined from unilaterally seeking to terminate or force the resignation of the other

member without permission of the Court."  State Dkt. No. 419 at 2.  In an order

following a hearing held on February 2, 2024, Judge Cohen indicated that these

interim orders remained in place, and he subsequently set an evidentiary hearing

for June 7, 2024, to decide certain rights of Mr. Simpson and Mr. Chassen vis-à-vis

the Debtor.  Bankr. Dkt. No. 41-19 at 2-3; State Dkt. No. 605.

Nonetheless, Mr. Simpson unilaterally filed a petition for Chapter 11 relief

on behalf of the Debtor on March 7, 2024.  Bankr. Dkt. No. 1 at 4.  The Debtor's

petition—which lists Mr. Simpson as its sole equity holder—includes the following

footnote:  "Jared Chassen . . . was deemed to have resigned as a member of JJ Arch

. . . .  Accordingly, Mr. Simpson currently owns 100% of the equity interests in the

Debtor."  *Id.* at 12 n.1; *accord id.* at 13 n.2.

Mr. Simpson's affidavit, submitted pursuant to Local Rule 1007-2, provides

the following narrative in a separate footnote:

> I have been involved in litigation in New York State court
> with Jared Chassen [], the former minority member of the
> Debtor regarding, inter alia, the management of the
> Debtor.  Mr. Chassen voluntarily decided to cease
> providing substantially all of his business time for the
> benefit of the Debtor no later than January 2024 and, as a
> result, was deemed to have resigned from the Debtor
> under the under [sic] the terms of the [Debtor's]
> Operating Agreement.  As a result of such resignation,
> Mr. Chassen's interest in the Debtor was 'deemed
> automatically redeemed by the [Debtor],' Mr. Chassen

> was 'no longer . . . deemed a "Member" of the [Debtor]'
> and Mr. Chassen was no longer 'entitled to any rights as a
> Member of the [Debtor] for any period from and after such
> Resignation[.]' . . . [A]lthough certain of the New York
> state court orders did enjoin the Debtor's members from
> unilaterally seeking to terminate or force the resignation
> of the other without permission of the court, such orders
> did not prohibit Mr. Chassen from voluntarily resigning
> from the Debtor in the manner in which he chose to do so.

Bankr. Dkt. No. 16 at 11 n.14.

One week later, on March 14, 2024, Mr. Chassen filed a Motion for an Order Dismissing the Debtor's Bankruptcy Case (Mr. Chassen's "First Motion to Dismiss"). Bankr. Dkt. No. 4. That motion argued that the Debtor's petition should be dismissed because "[t]he [Debtor's] Operating Agreement, together with the orders in the [State Court] Proceeding, leave no doubt that Mr. Simpson not only lacked authority to bring the Petition, but that this filing is in bad faith and in contempt of court." *Id.* at 4. AREH—making a functionally identical argument— joined that motion. Bankr. Dkt. No. 13 at 1-2. Mr. Chassen and AREH also filed motions to lift the automatic bankruptcy stay on March 25, 2024, on the grounds that "[t]he automatic stay generally only applies to the debtor and its property and does *not* extend to third parties, such as . . . third party guarantors, co-debtors, officers and members of a debtor." Bankr. Dkt. No. 38, ¶ 29; *accord* Bankr. Dkt. No. 40, ¶ 40; *see also* Bankr. Dkt. No. 38, ¶ 8 (describing this bankruptcy as "an improper attempt to use the automatic stay as [both] a sword and a shield"). The Bankruptcy Court granted the lift-stay motions on June 10, 2024, Bankr. Dkt. No. 132 at 3, and dismissed JJ Arch's Chapter 11 petition for cause on October 11, 2024,

6

Bankr. Dkt. No. 215 at 1.  JJ Arch appealed the Bankruptcy Dismissal Opinion on November 14, 2024.  ECF No. 1.

**LEGAL STANDARD**

Pursuant to 28 U.S.C. § 158(a)(1), this Court has jurisdiction "to hear appeals . . . from final judgments, orders, and decrees" of the bankruptcy court.  "Generally in bankruptcy appeals, the district court reviews the bankruptcy court's factual findings for clear error and its conclusions of law *de novo*."  *In re Charter Commc'ns, Inc.*, 691 F.3d 476, 482-83 (2d Cir. 2012) (emphasis added).

"The dismissal of a Chapter 11 petition for cause, however, is reviewed for abuse of discretion."  *Fuschi v. Bank of New York Mellon Tr. Co., N.A.*, No. 22-CV-332 (JSR), 2024 WL 4326942, at *3 (S.D.N.Y. Sept. 27, 2024); *see, e.g.*, *In re C-TC 9th Ave. P'ship*, 113 F.3d 1304, 1312 (2d Cir. 1997).  "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings."  *In re Carrington*, 710 F. Supp. 3d 248, 255 (S.D.N.Y. 2024) (citation omitted), *appeal dismissed*, No. 23-7433, 2024 WL 3491202 (2d Cir. May 3, 2024).  "A finding of fact is clearly erroneous when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."  *Lynch v. Barnard*, 590 B.R. 30, 35 (E.D.N.Y. 2018) (citation omitted), *aff'd sub nom.*, *In re Lynch*, 795 F. App'x 57 (2d Cir. 2020) (summary order).  Accordingly, "[f]actual findings must be upheld if plausible in light of the record viewed in its entirety."  *Id.* (citation omitted).

7

## DISCUSSION

Section 1112 governs the dismissal of a case filed under Chapter 11 of the Bankruptcy Code. Section 1112(b)(1) provides that, "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause." 11 U.S.C. § 1112(b)(1). Section 1112(b)(4) identifies specific circumstances that constitute "cause," *id.* § 1112(b)(4), but that list is "illustrative, not exhaustive," *C-TC*, 113 F.3d at 1311. "If a bankruptcy court determines that cause has been shown, then it has no choice, and no discretion, and must dismiss or convert the Chapter 11 case." *Lynch*, 590 B.R. at 36 (cleaned up). Under Section 1112(b)(2), however, a bankruptcy court may not dismiss a case if it (i) "finds and specifically identifies unusual circumstances establishing that converting or dismissing the case is not in the best interests of creditors and the estate," (ii) there is a reasonable likelihood of plan confirmation within a specified or reasonable period of time, and (iii) the grounds for dismissal were occasioned by any act or omission of the debtor (other than under 11 U.S.C. § 1112(b)(4)(A)), there exists a reasonable justification for such acts or omissions, and they will be cured within a reasonable period. 11 U.S.C. § 1112(b)(2)(A)-(B)(ii).

Here, the Bankruptcy Court dismissed the Chapter 11 petition on several enumerated grounds for "cause": (i) "[s]ubstantial or continuing loss to or diminution of the estate" and an "absence of a reasonable likelihood of rehabilitation," per Section 1112(b)(4)(A) of the Bankruptcy Code; (ii) "gross

mismanagement of the estate," per Section 1112(b)(4)(B); and (iii) "unexcused failure to satisfy timely any filing or reporting requirements," per Section 1112(b)(4)(F). Bankr. Op. at 25, 27, 29, 29 n.40. The Bankruptcy Court also dismissed the petition on one widely accepted unenumerated ground for "cause": bad faith. *Id.* at 48; *see, e.g.*, *Fuschi*, 2024 WL 4326942, at *3 (collecting cases). Finally, the Bankruptcy Court found that Section 1112(b)(2) did not provide an exception to dismissal and concluded that each adversary proceeding associated with this bankruptcy should be dismissed. Bankr. Op. at 48.

The Bankruptcy Court did not abuse its discretion in concluding that there was cause to dismiss the case pursuant to Section 1112(b)(4). Its finding of cause was not based on clearly erroneous or insufficient factual findings or on an erroneous view of the law.

> Despite the fundamental purpose of Chapter 11 proceedings to rehabilitate economically distressed businesses, this goal must be compromised where the operations of the debtor in possession continually erode the interests of creditors without a bright picture for reversing these losses in the future. Section 1112(b)(1) accom[m]odates these competing interests where there is a sufficient showing that the debtor would continue to sustain losses or diminish the estate if the reorganization effort is permitted to proceed *and* that there exists no reasonable likelihood of rehabilitation.

*In re Photo Promotion Assocs., Inc.*, 47 B.R. 454, 458 (S.D.N.Y. 1985) (cleaned up).

The Bankruptcy Court's conclusion that there was "[s]ubstantial or continuing loss to or diminution of the estate" under Section 1112(b)(4)(A) is well-supported in the record. *See* Bankr. Op. at 23-27. As detailed in the Bankruptcy

9

Dismissal Opinion, the Debtor is not actively generating revenue, as evidenced by, *inter alia*, the fact that Debtor is a "real estate holding company with no employees" whose "business is limited solely to its indirect ownership interests," per Mr. Simpson's affidavit, Bankr. Dkt. No. 16 at 5, and Mr. Simpson's unequivocal testimony at the 341 meeting that the Debtor's anticipated income was "zero" and that "there's no sources of revenue at this point for anywhere in JJ Arch . . . Like, there's no transactions that are occurring that are bringing positive cash flow into JJ Arch in its current time . . . it's impossible to bring any money in," Bankr. Dkt. No. 170-2 at 39:7-9, 39:11-13, 39:20. *See* Bankr. Op. at 23-24.

Coupled with the lack of income was "the exceptional rate at which the Debtor has incurred expenses administrative following the August Exchange." *See, e.g.*, Bankr. Dkt. No. 31 at 16 (Debtor Schedules listing the Debtor's largest creditor as being a single attorney hired by Simpson while the state court proceeding was still pending before Judge Cohen); Bankr. Dkt. No. 184 at 27 (Debtor's counsel anticipates generating $300,000 in attorneys' fees on or before the Plan's effective date); Bankr. Dkt. No. 195 at 13-15, 21 (interpleader action initiated by Great American Insurance Company alleging almost $900,000 in legal expenses incurred by Simpson in Costs of Defense in connection with the Debtor's Chapter 11 proceeding and the state court proceeding); *id.* at 15 ("indemnity payments made to resolve the [state l]awsuit, as well as claims made by [former counsel to the Debtor and Mr. Simpson] will exceed the remaining Policy proceeds."); Bankr. Op. at 24, n. 30 ("Neither the Debtor nor Mr. Simpson have provided evidence disputing the

amount of attorneys' fees advanced by Great American"). "Based upon the foregoing facts, it is evident that [the Debtor] continued to incur losses during its post-petition operations thereby diminishing the estate that would otherwise be available for the satisfaction of the creditors' claims." *In re Photo Promotion Assocs., Inc.*, 47 B.R. at 458.

The Bankruptcy Court's finding that there is "absence of a reasonable likelihood of rehabilitation" within the meaning of Section 1112(b)(4)(A) similarly finds ample support in the record.  The Debtor's proposed liquidation Plan contemplated paying all allowed administrative claims, secured claims, and general unsecured claims in full via the sale of certain properties owned by non-AREH entities.  *See* Bankr. Dkt. No. 184 at 7-8, 13; Bankr. Dkt. No. 31 at 10-13 (using addresses provided in Plan in connection non-AREH entities).  Yet the Debtor was prohibited from transferring those properties in this manner by Judge Cohen's orders in the state court proceedings.  *See, e.g.*, Bankr. Dkt. No. 199-1.  The proposed Plan was thus unconfirmable, and there was no other prospect of rehabilitation on the horizon that would justify the continued incursion of administrative expenses.  Bankr. Op. at 25-26.  The Bankruptcy Court's additional determinations of "gross mismanagement of the estate" under Section 1112(b)(4)(B) and an "unexcused failure to satisfy timely any filing or reporting requirements" per 1112(b)(4)(F) are similarly well founded based on, *inter alia*, the Debtor's post-petition lack of income; excessive accrual of expenses; and failure to timely file a

single monthly operating report, open a debtor-in-possession bank account, or adequately explain significant financial discrepancies. *Id.* at 27-30.

Finally, having already concluded when granting a prior remand motion that the circumstances surrounding this bankruptcy filing were questionable, the Bankruptcy Court found both subjective bad faith and objective futility in the Debtor's petition because "the record overwhelmingly suggests that this bankruptcy was a means of removing the State Court Proceeding from the purview of Justice Cohen." *Id.* at 33. The record supporting this conclusion is detailed at length by the Bankruptcy Court. *See id.* at 33-42.

The Debtor's brief largely argues that the Bankruptcy Court's finding of bad faith "rested on a false narrative presented by adverse parties." ECF No. 48 ("Appellant Brief" or "App. Br.") at 16. The Debtor argues that, rather than engage in gamesmanship, its actions were taken at the advice of multiple legal counsel. *Id.* at 17-18. The Court need not reach this issue, as dismissal of the Chapter 11 petition is mandated under both Sections 1112(b)(4)(A), 1112(b)(4)(B), and 1112(b)(4)(F). The Appellant Brief does not raise any arguments with respect to dismissal under Section 1112(b)(4)(F). *See generally id.* As to the Bankruptcy Court's finding of "substantial or continuing loss or diminution in value" under Section 1112(b)(4)(A), Appellant argues in a conclusory fashion that it had proposed a workable Chapter 11 Plan. *Id.* at 24. The Debtor fails to show that the Bankruptcy Court's conclusion to the contrary was clearly erroneous.

12

Nor does Appellant engage substantively with the Bankruptcy Court's well-reasoned evidentiary findings and legal conclusions as to Section 1112(b)(4)(B). The Debtor states that the Debtor "lacked consistent legal representation" or "access to Arch's books and records." *Id.* at 3. The Debtor further argues that Mr. Simpson "was left to defend himself *pro se* against an onslaught of attacks and burdensome motion practice and countersuits by two former partners." *Id.* at 23. Yet Mr. Simpson is not the Debtor. And the record establishes that the Debtor had legal representation throughout the course of the bankruptcy proceedings. While two of its counsel withdrew in June 2024 because of a breakdown in the attorney-client relationship as a result of the Debtor's disagreement with legal counsel and a refusal to follow counsel's advice, *see* Bankr. Dkt. Nos. 118, 120, the Debtor secured new counsel within weeks that represented it until the Chapter 11 petition was dismissed, *see* Bankr. Dkt. Nos. 129, 146.

Accordingly, the Court does not find any abuse of discretion in the decision to dismiss the Debtor's petition.

### CONCLUSION

For the reasons set forth above, the decision and order appealed from is **AFFIRMED** and Debtor's appeal is **DISMISSED**. The Clerk of Court is directed to terminate all pending motions and mark this case as closed on the Court's docket.

SO ORDERED.

Dated: June 5, 2026
     New York, New York

_____
JEANNETTE A. VARGAS
United States District Judge